IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RECIF RESOURCES, LLC, | § § § | |
| *Plaintiff/Counter-Defendant,* | § § | |
| vs. | § § | Civil Action No. 4:19-cv-02953 |
| JUNIPER CAPITAL ADVISORS, LP, JUNIPER CAPITAL INVESTMENTS, LLC, JUNIPER CAPITAL III, LP, STATE LINE EXPLORATION, LLC | § § § § § § | |
| *Defendants/Counter-Plaintiffs* | § § | |
| vs. | § § | |
| PAUL C. LANGLOIS and STEVEN M. JONES | § § § | |
| *Counter-Defendants* | § § § | |

_____

**Counter-Defendants' Motion for Summary Judgment on Copyright Counterclaims**
_____

## Table of Contents

Table of Authorities ................................................................................................................. ii

Nature and Stage of the Proceeding ...................................................................................... iv

Statement of Issues ................................................................................................................ iv

Standard of Review ............................................................................................................... iv

Factual Background ................................................................................................................ 1

Summary of the Argument ...................................................................................................... 4

Arguments and Authorities ..................................................................................................... 5

I.  Statutory damages are not available for Juniper's copyright counterclaims ............ 5

II. Actual damages are not available for Juniper's copyright counterclaims ................ 5

    A.  Actual damages must be based on the fair market value of the Copyrighted Works. .................................................................................. 5

    B.  Juniper's expert fails to consider a willing buyer. ....................................... 7

    C.  The existence of a willing buyer cannot be assumed. .................................. 9

III. There is no *mens rea* evidence to support Juniper's counterclaim for violation of 17 U.S.C. § 1202(b). ....................................................................... 10

Conclusion ............................................................................................................................ 12

Certificate of Service ............................................................................................................ 13

## Table of Authorities

**Cases**

*Adams v. United States*,
 218 F.3d 383 (5th Cir. 2000) ................................................................................... 9

*Aspen Tech., Inc. v. M3 Tech., Inc.*,
 569 Fed. App'x 259 (5th Cir. 2014). ....................................................................... 5

*Bell v. Taylor,*
 827 F.3d 699 (7th Cir. 2016) ................................................................................... 9

*Country Rd. Music, Inc. v. MP3.com, Inc.*,
 279 F. Supp. 2d 325 (S.D.N.Y. 2003) ..................................................................... 9

*Dash v. Mayweather*,
 731 F.3d 303 (4th Cir. 2013) ............................................................................... 6, 7

*Durant v. Greenfield & Fortenberry, LLC*,
 No. 1:16-CV-965-RP, 2018 WL 3155822 (W.D. Tex. June 28, 2018) ............... 6, 7

*Energy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, L.P.*,
 948 F.3d 261 (5th Cir. 2020) ................................................................................... 5

*Garcia v. Bank of New York Mellon*,
 2018 WL 2321990 (S.D. Tex. Mar. 21, 2018). ...................................................... iv

*Guajardo v. Freddie Records*,
 No. H-10-2024, 2014 WL 12605057 (S.D. Tex. Dec. 12, 2014) .......................... 11

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*,
 No. 4:08-CV-03181, 2010 WL 4366990 (S.D. Tex. Oct. 27, 2010) .................... 7, 9

*Jarvis v. K2 Inc.*,
 486 F.3d 526 (9th Cir. 2007) ................................................................................... 9

*MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*,
 622 F.3d 361 (5th Cir. 2010) ............................................................................... 6, 8

*On Davis v. The Gap, Inc.*,
 246 F.3d 152 (2d Cir. 2001) ............................................................................ 5, 6, 7

*Stevens v. Corelogic, Inc.*,
 899 F.3d 666 (9th Cir. 2018) ........................................................................... 10, 11

*Straus v. DVC Worldwide, Inc.*,
  484 F. Supp. 2d 620 (S.D. Tex. 2007) .................................................................... 6

*The Football Ass'n Premier League Ltd. v. YouTube, Inc.*,
  33 F. Supp. 2d 159 (S.D.N.Y. 2009) ...................................................................... 5

*Tomelleri v. Zazzle*,
  No. 13-CV-02576-EFM-TJJ, 2015 WL 8375083 (D. Kan. Dec. 9, 2015) ............ 11

**Statutes**

17 U.S.C. § 1202(b) ............................................................................................ 3, 4, 10, 12

17 U.S.C. § 412 ............................................................................................................ 2, 5

Fed. R. Civ. P. 56(a) ...................................................................................................... iv

Plaintiff/Counter-Defendant Recif Resources, LLC and Counter-Defendants Paul C. Langlois and Steven M. Jones (collectively "Recif" or "Counter-Defendants") move for summary judgment on the copyright counterclaims alleged by Counter-Plaintiff Juniper Capital Advisors, LP, Juniper Capital Investments, LLC, Juniper Capital III, LP, and State Line Exploration, LLC's (together "Juniper").

## Nature and Stage of the Proceeding

This case was filed in state court in January 2019 and removed to federal court in August 2019. Doc 1. The pleading deadline was January 15, 2020. Doc. 63. Expert report deadlines have also passed. Doc. 122. The discovery deadline is July 3, 2020. Doc 122. Docket call is scheduled for October 22, 2020. Doc. 122.

## Statement of Issues

1. Has Juniper presented sufficient evidence of actual damages to support its copyright counterclaims?

2. Can Juniper recover statutory damages for its counterclaim for violation of 17 U.S.C. § 1202(b)?

3. Has Juniper presented sufficient evidence of *mens rea* to support its counterclaim for violation of 17 U.S.C. § 1202(b)?

## Standard of Review

Summary judgment is required against a plaintiff who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. Fed. R. Civ. P. 56(a); *Garcia v. Bank of New York Mellon*, 2018 WL 2321990, at *1 (S.D. Tex. Mar. 21, 2018).

**Factual Background**

In 2018, Recif and Juniper were working together to prepare to invest in an oil and gas opportunity Recif had presented to Juniper ("the Recif Prospect"). The parties exchanged numerous documents as they analyzed the Recif Prospect and developed their investment strategy. In February 2018, Juniper sent Recif a 24-page PDF it wanted Recif to review and analyze ("the Juniper PDF").[1] The Juniper PDF included 16 pages depicting Recif's confidential and proprietary information[2] and eight pages depicting publicly available well logs and their locations on a map.[3] In April 2018, Juniper gave Recif a large poster depicting six maps of Texas, Louisiana, and Mississippi ("the Juniper Poster")[4] (the Juniper PDF and Juniper Poster are referred to collectively as "the Copyrighted Works").

On May 1, 2018, Juniper informed Recif it was no longer interested in investing in the Recif Prospect, and the parties went their separate ways. On May 23, 2018, Recif met with another private equity group, Outfitters Energy Capital, to pitch the Recif Prospect. During this meeting, Recif showed Outfitters the Juniper Poster. Recif met with Outfitters for a second time in June 2018 and showed a PowerPoint related to the Recif Prospect that included the eight pages from the Juniper PDF with the publicly available well logs and map.[5] Outfitters ultimately did not invest in the Recif Prospect.

---

[1] Exhibit 1.

[2] *Id*. at pp. 10-24.

[3] *Id*. at pp. 1-8.

[4] Exhibit 2.

[5] Recif did not give Outfitters a copy of the PowerPoint presentation or the Juniper Poster in either the May or June meeting. Outfitters never invested with Recif, nor has it invested or

It is undisputed that Recif never found a third-party investor, did not invest its own money, and has not developed the Recif Prospect. The only entity to invest in the Recif Prospect is Juniper, who surreptitiously began investing only days after dumping Recif.[6]

Recif sued Juniper in state court in Harris County, Texas in January 2019. Doc. 1-2. Seven months later, on July 14, 2019, Juniper copyrighted the eight pages from the Juniper PDF that Recif showed to Outfitters.[7] On August 8, 2019, Juniper asserted a copyright infringement counterclaim and removed the case to federal court. Doc. 1.

Recif filed a Rule 12(b)(6) Motion to Dismiss the counterclaim in September 2019, arguing that Juniper failed to state a claim because the counterclaim did not allege, and Juniper had no basis to allege, actual damages as a result of the alleged infringement. Doc. 18. Statutory damages are not available to Juniper under the Copyright Act because the copyright was not registered until after the alleged infringement. 17 U.S.C. § 412. In response, Juniper amended its counterclaim to allege it was damaged in the form of "a reasonable royalty rate that a willing buyer would have been reasonably required to pay [Juniper] as a licensing fee for the actual use of [Juniper]'s copyrighted materials." Doc. 22 at ¶ 33. Recif allowed the motion to dismiss to be denied as moot. Doc. 45.

---

conducted operations in any of the oil and gas formations depicted in the Copyrighted Works since meeting with Recif.

[6] On May 3, 2018, Juniper proposed terms for a joint venture with a land broker (Amelia Resources) to execute the Recif Prospect without Recif. On May 15, 2018, Juniper informally finalized the terms of the joint venture. *See* Exhibit 3. Since May 15, 2018, Juniper has invested approximately $90 million into this venture.

[7] Exhibit 4.

**Counter-Defendants' MSJ on Copyright Counterclaims**          **Page 2**

Juniper copyrighted the Juniper Poster on January 8, 2020.[8] It then added a copyright infringement counterclaim related to the Juniper Poster, as well as a violation of 17 U.S.C. § 1202(b) counterclaim, alleging Recif "intentionally removed" Juniper's copyright management information from the Juniper PDF while "knowing, or having reasonable grounds to know, that such acts would induce, enable, facilitate, or conceal copyright infringement." Doc. 69 at 100. Juniper also joined Recif principals Paul Langlois and Steven Jones as individual co-defendants. *Id.*

Juniper filed its expert reports in support of its copyright counterclaims in May 2020. Regarding Juniper's actual damages, the report of Brent K. Bersin reads:

> To date, I have not identified lost profits on lost sales sustained by [Juniper] as a result of [Recif's] alleged use of the Copyrighted Works. Conversely, I am not currently aware of additional profits realized by [Recif] from alleged use of the Copyrighted Works.[9]

Unable to prove lost or gained profits, Juniper relies on the Bersin report to calculate Juniper's actual damages "in the form of a reasonable royalty for the Counter-Defendants' alleged infringing use of the Copyrighted Works."[10]

---

[8] Exhibit 5.

[9] Exhibit 6 at p. 22 ¶46. Juniper also issued a report from Wayman Gore that does not purport to calculate a reasonable royalty.

[10] Exhibit 6 at p. 23 ¶46. Bersin filed a reply report, but it is irrelevant.

---

## Summary of the Argument[11]

Juniper used the copyrights to remove the case to federal court, but it never intended to sell or license the documents. Juniper now admits it has no evidence the alleged infringements or violation of 17 U.S.C. § 1202(b) caused it to lose any revenue or caused Recif to gain any revenue. Juniper is not entitled to statutory damages because the copyrights were not registered until after the alleged infringements. And Juniper is not entitled to actual damages, which requires that a hypothetical royalty be calculated based on an objective determination of the fair market value, or what a willing buyer would pay a willing seller for the royalty. Juniper's expert report supporting the hypothetical royalty fails to utilize this calculation, instead measuring only what a third party would have charged to recreate the copyrighted works, had they been asked. Juniper's counterclaim for violation of 17 U.S.C. § 1202(b) additionally fails because Juniper has not presented sufficient evidence of *mens rea* to support its claim as required by the statute.

---

[11] By filing this motion, Recif does not admit that Juniper's alleged copyrights are valid, that Recif infringed the alleged copyrights, that Juniper's experts are qualified to proffer their opinions, that the opinions are reliable, or that the experts and opinions were properly disclosed.

## Arguments and Authorities

**I.     Statutory damages are not available for Juniper's copyright counterclaims**

Statutory damages for copyright claims are only available in actions based on infringements that occurred after the effective date of the copyright's registration. 17 U.S.C. § 412. And section 412 applies to "any action under" Title 17. *Id.*

All of Juniper's copyright counterclaims (1) arise under Title 17, (2) are based on infringements that occurred after the effective date of the copyright's registration, and (3) do not fall within any exception. Juniper is therefore precluded from recovering statutory damages for any of those counterclaims. *See also Energy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 268 (5th Cir. 2020) ("Registration of a copyright is a prerequisite to obtaining statutory damages for infringement."); *The Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 633 F. Supp. 2d 159, 165 (S.D.N.Y. 2009) ("Section 412 must be construed according to its terms: subject to specified exceptions, it bars statutory damages for all foreign and domestic works not timely registered.").

**II.    Actual damages are not available for Juniper's copyright counterclaims.**

    **A.    Actual damages must be based on the fair market value of the Copyrighted Works.**

Actual damages "undertake[] to compensate the [copyright] owner for any harm he suffered by reason of the infringer's illegal act." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001). They are normally established in copyright cases through losses sustained by the copyright owner and/or profits received by an infringer. *See, e.g., Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 Fed. App'x 259, 271 (5th Cir. 2014). While courts have

allowed plaintiffs who cannot otherwise prove damage to recover a hypothetical royalty or licensing fee, they have only done so in limited circumstances. *See Davis*, 246 F.3d at 164-72. As some courts have explained:

> [A]warding the copyright owner the lost license fee can risk abuse. . . . [T]he owner may claim unreasonable amounts as the license fee. The question is not what the owner would have charged, but rather what is the fair market value. Accordingly, the owner must show that the thing taken had a fair market value.

*Durant v. Greenfield & Fortenberry, LLC*, No. 1:16-CV-965-RP, 2018 WL 3155822, at *5 (W.D. Tex. June 28, 2018) (quoting *Davis*, 246 F.3d at 166).

To survive summary judgment, Juniper must offer "non-speculative evidence" that the Copyrighted Works "had a fair market value, such that it suffered actual damage because of [Recif]'s failure to pay a licensing fee." *Dash v. Mayweather*, 731 F.3d 303, 316 (4th Cir. 2013) (quoting *Davis*, 246 F.3d at 166). When calculating actual damages under the lost licensing fee theory, "[t]he question is not what the owner would have charged, nor what the infringer might have been willing to pay." *Id*. at 313. Rather, the fair market value focuses on negotiations "between a willing buyer and a willing seller contemplating the use the infringer made." *Id*.; *see also MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 366 (5th Cir. 2010) (defining "reasonable royalty rates" as "what a willing buyer would have been reasonably required to pay a willing seller as a licensing fee for the actual use of the copyrighted material by the infringers"); *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 648 (S.D. Tex. 2007) ("[A]ctual damages are determined by what a willing buyer would have been reasonably required to pay a willing seller for using [the copyrighted material].").

### B. Juniper's expert fails to consider a willing buyer.

The most common way to establish the fair market value of a copyrighted work, i.e. what a willing buyer would have been reasonably required to pay a willing seller for the alleged use, is to present evidence of the owner's prior sale or licensing of similar copyrighted works. *See Davis*, 246 F.3d at 161; *Dash*, 731 F.3d at 318; *Durant*, 2018 WL 3155822, at *5. In the absence of prior sales or licensing by the owner, fair market value may be established by evidence of licensing fees paid by the alleged infringer to other artists for comparable uses of comparable works. *Dash*, 731 F.3d at 319. It can also be based on "established rates that are regularly paid by licensees." *Davis*, 246 F.3d at 167; *see also Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-CV-03181, 2010 WL 4366990, at *11 (S.D. Tex. Oct. 27, 2010) ("Fair market value may be established where: (1) a plaintiff demonstrates that he previously received compensation for use of the infringed work; or (2) the plaintiff produces evidence of benchmark licenses, that is, what licensors have paid for use of similar work.")

In his report, Bersin does not use any of these accepted methods to calculate the alleged fair market value of the Copyrighted Works. He acknowledges "that the Copyrighted Works have not been previously licensed by [Juniper] to a third party and were prepared solely for its internal use."[12] He also admits he is "not aware of any executed licenses or royalties paid for comparable copyrighted works" or "any industry or standard

---

[12] Exhibit 6 at p. 23 ¶50.

royalty rates for the Copyrighted Works, as they represent unique works prepared for Juniper's internal investment purposes."[13]

Rather, Bersin assumes that by "allegedly ma[king] unauthorized use of the Copyrighted Works," Recif "avoided payment of a license fee to a third party for creation of works analogous to the Copyrighted Works to use in soliciting investment funding."[14] He then concludes, based on price quotes he solicited from three petroleum engineering consulting firms, that Recif "would have otherwise paid at least $54,000 to as much as $89,500 in the marketplace for a third-party to create and license works analogous to the Copyrighted Works."[15] There is no evidence in Bersin's report or elsewhere that any of the consulting firms have actually sold works analogous to the Copyrighted Works in the range of $54,000 to $89,500. In fact, Juniper failed to present any evidence that works analogous to the Copyrighted Works have *ever* been sold, for any price.

Bersin's opinion only contemplates the price a willing seller would ask for creation of the Copyrighted Works. It wholly fails to consider what a willing buyer would agree to pay. Yet, fair market value cannot be determined without considering both a willing buyer and a willing seller. *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 366 (5th Cir. 2010); *Leland Med. Centers, Inc. v. Weiss*, No. 4:07CV67, 2007 WL 2900599, at *7 (E.D. Tex. Sept. 28, 2007); *Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir.

---

[13] Exhibit 6 at p. 23 ¶50.

[14] *Id.* at p. 24 ¶52.

[15] *Id.* at p. 29 ¶63

2007); *Country Rd. Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 331 (S.D.N.Y. 2003).

### C. The existence of a willing buyer cannot be assumed.

The price a seller would like to charge for its work does not, on its own, establish fair market value. In *Bell v. Taylor*, for example, the Seventh Circuit held that an advertised price for a license to download a photo did not prove actual damages for infringement of the photo because the plaintiff did not produce evidence that any buyer was willing to pay that price. 827 F.3d 699, 708-10 (7th Cir. 2016); *see also Adams v. United States*, 218 F.3d 383, 386 (5th Cir. 2000) ("[T]he potential transaction is to be analyzed from the viewpoint of a *hypothetical* buyer whose only goal is to maximize his advantage. Courts may not permit the positing of transactions which are unlikely and plainly contrary to the economic interest of a hypothetical *buyer*.") (emphasis in original); *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-CV-03181, 2010 WL 4366990, at *11 (S.D. Tex. Oct. 27, 2010) (holding statement that plaintiff would have charged a $25,000 licensing fee "cannot alone establish the amount of actual damages to which Plaintiff is entitled" because it "fails to represent that $25,000 is the fair market value for a licensing fee.").

Similarly, Juniper has no evidence any buyer exists that is willing to pay $54,000 to $89,500 for the Copyrighted Works. Without this evidence, any fair market value calculation is impermissibly speculative as a matter of law.

**III.   There is no *mens rea* evidence to support Juniper's counterclaim for violation of 17 U.S.C. § 1202(b).**

17 U.S.C. § 1202(b) concerns the *intentional* removal or alteration of copyright management information ("CMI") from a copyrighted work. Even if Juniper was entitled to recover statutory damages, its counterclaim still fails as a matter of law because it cannot prove the requisite intent.

Section 1202(b) only imposes liability for a party who removes CMI while "knowing … or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b). The Ninth Circuit[16] recently explained that a plaintiff must adduce proof of *mens rea* beyond the mere act of removing CMI. *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673-75 (9th Cir. 2018). The *mens rea* element "must have a more specific application than the universal possibility of encouraging infringement; specific allegations as to how identifiable infringements 'will' be affected are necessary." *Id*. at 674. The court found this requirement especially compelling in light of the legislative history, wherein the *mens rea* language was added to make clear that liability was limited "to instances in which the defendant knows or has a reasonable basis to know that the removal or alteration of CMI or the distribution of works with CMI removed will aid infringement." *Id.* at 675 (emphasis in original). The *Stevens* court concluded that a generic argument that removed CMI may make it easier for someone

---

[16] Courts within the Fifth Circuit have not analyzed these statutory requirements in detail.

to infringe "won't wash," because "[t]hat assertion rests on no affirmative evidence at all; it simply identifies a general possibility that exists whenever CMI is removed." *Id.* at 673.

There is no evidence Recif acted with the required intent or knowledge. Juniper relies on generic assertions that the removal of CMI itself shows the required intent and knowledge based on the tautological assertion that, without it, Recif should have known that "inadvertent" reproduction "could" result. *See* Doc. 69 at ¶ 100. This is insufficient, and Recif is entitled to summary judgment. *See Tomelleri v. Zazzle*, No. 13-CV-02576-EFM-TJJ, 2015 WL 8375083, at *12 (D. Kan. Dec. 9, 2015) (summary judgment granted where plaintiff had no evidence defendant added its CMI with intent to induce infringement); *Guajardo v. Freddie Records*, No. H-10-2024, 2014 WL 12605057, at *3 (S.D. Tex. Dec. 12, 2014) (summary judgment granted where no evidence of intent).

There is also evidence Recif believed it could freely use images from a collaboratively created document. The subject matter that Juniper claims Recif committed its violation of 17 U.S.C. § 1202(b) on, the Juniper PDF,[17] contained Recif's own copyrighted works on two/thirds of its pages. Juniper has provided no evidence that Recif did not understand that images from this collaboratively created document were not its to freely use. Similarly, Juniper emailed Recif on May 3, 2018 (two days after rejecting Recif's presented opportunity) stating:

> [Y]ou guys will of course still have access to this information and with your release from exclusivity from our term sheet, you'll also have the ability to use that information to try to find new sources of funding.[18]

---

[17] Doc. 69 at ¶.
[18] Exhibit 7.

Steven Jones testified that Recif interpreted this email as permission to use what are now the Copyrighted Works.[19]

Juniper has failed to produce any evidence that Recif acted with the required intent. Recif is therefore entitled to summary judgment on the Section 1202(b) claim.

## Conclusion

For these reasons stated above, Plaintiff/Counter-Defendants Recif Resources, LLC and Counter-Defendants Paul C. Langlois and Steven M. Jones request that the Court grant Counter-Defendants' Motion for Summary Judgment.

Respectfully submitted,

*/s/ K. Knox Nunnally*
K. Knox Nunnally (attorney-in-charge)
knoxnunnally@warejackson.com
Texas Bar No. 24063995
Federal I.D. No. 1419997
Avery Sheppard (of counsel)
averysheppard@warejackson.com
State Bar No. 24088403
Federal I.D. No. 2200210
2929 Allen Parkway, 39th Floor
Houston, Texas 77019
713.659.6400 – Phone
713.669.6262 – Fax

**Counsel for Recif Resources, LLC, Paul Langlois and Steven Jones**

---

[19] Exhibit 8.

## Certificate of Service

I hereby certify that on the 23rd day of June 2020, I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

       /s/ K. Knox Nunnally
       K. Knox Nunnally