IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RECIF RESOURCES, LLC, § <br> § <br> *Plaintiff/Counter-Defendant,* § <br> § <br> vs. § <br> § <br> JUNIPER CAPITAL ADVISORS, LP, § <br> JUNIPER CAPITAL INVESTMENTS, § <br> LLC, JUNIPER CAPITAL III, LP, § <br> STATE LINE EXPLORATION, LLC § <br> § <br> *Defendants/Counter-Plaintiffs* § <br> § <br> vs. § <br> § <br> PAUL C. LANGLOIS and STEVEN M. § <br> JONES § <br> § <br> *Counter-Defendants* § <br> § | Civil Action No. 4:19-cv-02953 |

_____

**Counter-Defendants' Reply in Support of
Motion for Summary Judgment on Copyright Counterclaims**
_____

Plaintiff/Counter-Defendant Recif Resources, LLC and Counter-Defendants Paul C. Langlois and Steven M. Jones (collectively "Recif" or "Counter-Defendants") file this reply in support of their motion for summary judgment on the copyright counterclaims (Dkt. 128) alleged by Counter-Plaintiffs Juniper Capital Advisors, LP, Juniper Capital

Investments, LLC, Juniper Capital III, LP, and State Line Exploration, LLC's (collectively "Juniper").

## Nature and Stage of the Proceeding

Recif filed is motion for summary judgment on Juniper's copyright counterclaims on June 23, 2020. Dkt. 128. Juniper filed its response on July 14, 2020. Dkt. 134. Docket call is scheduled for October 22, 2020. Dkt. 122.

## Statement of Issues

1. Has Juniper presented sufficient evidence of actual damages to support its copyright counterclaims?

2. Can Juniper recover statutory damages for its counterclaim for violation of 17 U.S.C. § 1202(b)?

3. Has Juniper presented sufficient evidence of *mens rea* to support its counterclaim for violation of 17 U.S.C. § 1202(b)?

## Standard of Review

Summary judgment is required against a plaintiff who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. Fed. R. Civ. P. 56(a); *Garcia v. Bank of New York Mellon*, 2018 WL 2321990, at *1 (S.D. Tex. Mar. 21, 2018).

## Arguments and Authorities

**I.   Juniper's damage expert did not utilize the correct damage calculation**

Juniper now admits that the proper measure of damages for its hypothetical royalty theory is the fair market value of the Copyrighted Works, determined by "what a willing buyer would have been reasonably required to pay a willing seller as a licensing fee for the use of the copyrighted materials by the infringers." Dkt. 134 at pp. 9-10. But it is undisputed that Juniper's damage expert Brent Bersin did not utilize this formula; instead, Bersin calculated what Recif "would have otherwise paid … for a third-party to create and license works analogous to the Copyrighted Works."[1] Bersin accomplished this by soliciting quotes from three engineering firms for allegedly analogous works.[2] Bersin made no attempts to account for a willing buyer in his calculations.

In attempting to justify Bersin's method, Juniper asserts, without citing evidence, that "[t]hese are firms that set market rates—they regularly charge for such work and their rates indicate what willing sellers and buyers will pay." Doc. 134. at p. 11. First, this is nothing more than argument of counsel—such a statement does not appear in Bersin's report, Bersin's deposition, or anywhere else in the record. *See Roberson v. Vehicle*, CV H-19-1393, 2020 WL 533109, at *4 (S.D. Tex. Feb. 3, 2020) (holding arguments of counsel are not competent summary judgment evidence). Moreover, even if the firms themselves

---

[1] Dkt. 128-6 at p. 29, ¶ 6. Bersin admitted in his deposition that his damage calculation is based on what Recif would have otherwise had to pay for a third party to recreate the Copyrighted Works, stating the firms from which he solicited quotes "were able to give a quote that was a direct proxy for the recreation of works analogous to the copyrighted works." Dkt. 134-18 at p. 232.

[2] Dkt. 128-6 at p. 24, ¶ 53.

could somehow establish what a willing buyer would pay, that is not what they were asked to do. Instead, Bersin simply solicited quotes "for the creation of and license to works analogous to the Copyrighted Works" from the firms.[3] Bersin did not ask the firms to account for a willing buyer or market conditions (e.g. supply and demand) and he did not make his own adjustments to the firm's quotes. This is because Bersin never set out to calculate market value; he simply wanted to determine what Recif would have otherwise had to pay a third party to create the Copyrighted Works:

> If the Counter-Defendants had not allegedly made unauthorized use of the Copyrighted Works, they could have otherwise paid a one-time fee to a petroleum engineering-consulting firm to create technical analysis and presentations (also "works") analogous to the Copyrighted Works. As such, the Counter-Defendants' avoided payment of a license fee to a third party for creation of works analogous to the Copyrighted Works to use in soliciting investment funding.[4]

## II. There is no support for Juniper's expert's damage calculation in the caselaw

Juniper cites one unpublished opinion from the Southern District of New York to defend Bersin's damage calculation. Dkt. 134 at p. 13 (citing *Romanowicz v. Alister & Paine, Inc.*, 2018 WL 4762980, at *3–4 (S.D.N.Y. Aug. 3, 2018)). But even this case does not help Juniper. In *Romanowicz*, the court upheld a hypothetical royalty for a copyrighted photograph based on the price associated with a similar photograph that was available to license online from Getty Images. *Romanowicz*, 2018 WL 4762980 at *4. Juniper can point to no such evidence in this case; none of the firms from which Bersin solicited quotes had works analogous to the Copyrighted Works available for sale. Additionally, to support its

---

[3] Dkt. 128-6 at p. 24, ¶ 53.

[4] Dkt. 128-6 at p. 24, ¶ 52.

holding, the *Romanowicz* court cited the seminal case of *On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001), in which the court held that a hypothetical royalty may be established through evidence of "established rates that are regularly paid [for copyrights] by licensees." *On Davis*, 246 F.3d at 167. Bersin admits, however, that he "ha[s] not identified any industry or standard royalty rates for the Copyrighted Works, as they represent unique works prepared for Juniper's internal investment purposes."[5]

## III. The alternative evidence relied on by Juniper does not establish market value

Juniper points to snippets of speculative testimony from witnesses other than Bersin as alternatively supporting a fair market value calculation. But none of the witnesses cited by Juniper opined on "what a willing buyer would have been reasonably required to pay a willing seller as a licensing fee for the actual use of the copyrighted material by the infringers," which Juniper admits is the only proper damage calculation when determining a reasonable royalty rate. Dkt. 134 at pp. 9-10 (citing *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 366 (5th Cir. 2010)).

For example, Recif's expert Bill Rhea was asked to calculate how many hours he thought it would take Recif to recreate the Copyrighted Works on its own.[6] Juniper's counsel then multiplied those hours by an hourly billing rate to come up with $6,000 as a

---

[5] Dkt. 128-6 at pp. 23-24, ¶ 50.

[6] Dkt. 134-20 at pp. 126-129.

value for the Copyrighted Works.[7] This is the same damage theory utilized by Bersin, which, as discussed above, is indisputably improper.[8]

## IV. The fact that Recif used the Copyrighted Works does not save Juniper

Juniper concludes its defense of actual damages by arguing, "At minimum, it is undisputed that the underlying data in the Copyrighted Works had an acquisition cost and that Juniper creatively analyzed the data and presented conclusions—and did a good enough job that Recif copied it and Juniper's expert offered unrebutted testimony as to its quality." Dkt. 134 at p. 16. But the fact that Recif used the Copyrighted Works "is not enough to show that [the Copyrighted Works] had fair market value." *Dash v. Mayweather*, 731 F.3d 303, 324 (4th Cir. 2013). As the court explained in *Dash*:

> Allowing the "fact of use" alone to rebut a properly supported motion for summary judgment would entirely eliminate the copyright holder's obligation to show that his work had a fair market value, a requirement designed to combat the risk of abuse inherent in recognizing a plaintiff's lost licensing fee as a measure of § 504(b) actual damages. In the face of overwhelming evidence that his work lacked fair market value, the plaintiff would need only to reiterate his initial complaint—that the defendant used his work without his permission—to survive summary judgment. … This outcome not only obviates the requirement that a copyright holder show that the infringed work had a fair market value, it also runs contrary to the well-established principles governing summary judgment under Federal Rule of Civil Procedure 56.

*Dash v. Mayweather*, 731 F.3d 303, 324 (4th Cir. 2013) (internal citations omitted).

---

[7] Dkt. 134-20 at p. 129.

[8] Juniper's attempts to analogize Rhea's damage model for Recif's claims to the fair market value analysis calculation required for Juniper's copyright infringement claims are misplaced. Simply put, the damage models relate to different claims with different damage requirements.

## V. Recif did not have the requisite knowledge or intent under 17 U.S.C. § 1202(b)

17 U.S.C. § 1202(b) states in relevant part, "No person shall, without the authority of the copyright owner or the law intentionally remove or alter any copyright management information ... *knowing*, or, with respect to civil remedies under section 1203, having *reasonable grounds to know*, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." (emphasis added). Thus, "[l]iability under § 1202(b) requires knowledge." *Energy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, n. 16 (5th Cir. 2020).

The Fifth Circuit has not yet analyzed section 1202's mental-state requirement in detail, but both the Second and Ninth circuits have concluded that the statute includes a "double scienter requirement." *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018) (interpreting § 1202(a)) (summary order); *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) (interpreting § 1202(b)). Put another way, Juniper must show that Recif had either an intent to induce, enable, facilitate, or conceal infringement, or, at a minimum, knowledge or reasonable grounds to know that its actions would do so. 17 U.S.C. §§ 1202(a), (b); *see also Philpot v. Scene Entm't, LLC*, CV 18-9085, 2019 WL 8275341, at *2 (E.D. La. Apr. 4, 2019) ("Plaintiff has fallen short of putting forth a well-pleaded allegation that Defendant willfully removed the metadata or that Defendant acted with knowledge that removing the metadata would facilitate further copyright infringement.").

Because Juniper has failed to present any evidence that Recif acted with the required intent or knowledge, Juniper's section 1202 claim should be dismissed.

**VI. Juniper may not recover any statutory damages under the plain reading of 17 U.S.C. § 412**

Juniper cites an unpublished opinion from the Central District of Illinois and selectively quotes from 17 U.S.C. § 412 to argue that its claims under 17 U.S.C. § 1202 are somehow exempt from section 412's pre-registration requirement. Doc. 134 at pp. 7-9. A full reading of section 412 shows the contrary:

> In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—
>
> **(1)** any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> **(2)** any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412.

Section 412 begins with the phrase "In any action under this title …" *Id*. The referenced "title" is Title 17 of the United States Code, entitled "Copyrights." *Id*. Thus, subject to the specific exceptions provided within, section 412 applies to any action under Title 17 of the United States Code, which includes 17 U.S.C. § 1202. *See United States v. Lauderdale County, Mississippi*, 914 F.3d 960, 964 (5th Cir. 2019) ("When the language is plain, we must enforce the statute's plain meaning, unless absurd.").

Juniper argues that the phrase "as provided by sections 504 and 505" somehow limits section 412's applicability to only sections 504 and 505. But this interpretation renders almost the entire statute meaningless, including the terms "In any action under this title", "other than an action brought for a violation of the rights of the author under section 106A(a)", and "or an action instituted under section 411(c)". *See TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 449, 151 L. Ed. 2d 339 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

Although the Fifth Circuit has held that "[r]egistration of a copyright is a prerequisite to obtaining statutory damages for infringement," *Energy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 268 (5th Cir. 2020), it has not explicitly ruled that section 1202 claims fall within the scope of section 412. However, the court has made clear that statutes should be enforced according to their "plain meaning, unless absurd." *Lauderdale County*, 914 F.3d at 964; *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013); *see also Latex Constr. Co. v. Nexus Gas Transmission, LLC*, CV 4:20-1788, 2020 WL 3962247, at *2 (S.D. Tex. July 13, 2020) ("When the plain language of a statute is unambiguous and does not lead to an absurd result, the Court's inquiry begins and ends with the plain meaning of that language.")

Because the plain meaning of section 412 encompasses 17 U.S.C. § 1202 within its scope, and because that result is not absurd, Juniper may not recover statutory damages for its section 1202 claim.

## Conclusion

For these reasons stated above, Plaintiff/Counter-Defendants Recif Resources, LLC and Counter-Defendants Paul C. Langlois and Steven M. Jones request that the Court grant Counter-Defendants' Motion for Summary Judgment.

Respectfully submitted,

 /s/ K. Knox Nunnally
K. Knox Nunnally (attorney-in-charge)
knoxnunnally@warejackson.com
Texas Bar No. 24063995
Federal I.D. No. 1419997
Avery Sheppard (of counsel)
averysheppard@warejackson.com
State Bar No. 24088403
Federal I.D. No. 2200210
2929 Allen Parkway, 39th Floor
Houston, Texas 77019
713.659.6400 – Phone
713.669.6262 – Fax

**Counsel for Recif Resources, LLC, Paul Langlois and Steven Jones**

## Certificate of Service

I hereby certify that on the 21st day of July 2020, I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

 /s/ K. Knox Nunnally
K. Knox Nunnally