United States District Court
Southern District of Texas
**ENTERED**
September 18, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RECIF RESOURCES, LLC, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-2953 |
| | § | |
| JUNIPER CAPITAL ADVISORS, L.P., | § | |
| *et al.*, | § | |
|     Defendants. | § | |

## **MEMORANDUM AND ORDER**

This case is before the Court on the Motion to Exclude the Testimony of Brent K. Bersin ("Motion") [Doc. # 139] filed by Recif Resources, LLC ("Recif"), Paul C. Langlois, and Steven M. Jones. Juniper Capital Advisors, L.P., Juniper Capital Investments, LLC, Juniper Capital III, LP, and State Line Exploration, LLC (collectively, "Juniper") filed a Response [Doc. # 162]. Recif, Langlois, and Jones filed a Reply [Doc. # 179]. Having reviewed the record and the applicable legal authorities, the Court **denies** the Motion.

## **I.     BACKGROUND**

For purposes of the pending Motion, the factual background is straight-forward and largely uncontested. In February 2018, Juniper created a cross-section map and corresponding well log interpretations ("Cross-Section Analysis") of oil-producing formations across Texas, Louisiana, and Mississippi. Juniper also created six region-

wide maps displaying various analysis related to the region, which Juniper then placed on a large poster ("Six Map Poster"). On February 22, 2018, Juniper provided the Cross-Section Analysis, other geologic maps, and a copy of the Six Map Poster to Recif.

It is uncontroverted that Recif later removed Juniper's name and logo from the Cross-Section Analysis and the Six Map Poster, and inserted Recif's own logo. Recif then shared Juniper's works with at least one Juniper competitor. Juniper obtained federal copyright registrations for the Cross-Section Analysis and the Six Map Poster (the "Copyrighted Works"), and then filed a copyright infringement counterclaim in this case against Recif, Langlois, and Jones. Juniper also asserted a claim under the Digital Millennium Copyright Act ("DMCA") based on Recif's removal of Juniper's identifying information from the Cross-Section Analysis.

Juniper designated Brent K. Bersin as its damages expert on the copyright infringement and DMCA claims. Bersin issued his Report [Doc. # 139-3] on May 8, 2020. Bersin determined the reasonable royalty or license fee for the Cross-Section Analysis and the Six Map Poster by soliciting quotes from three petroleum engineering-consulting firms to create and license analogous works. *See* Report, ¶¶ 51-52. Based on his consideration of the three quotes, Bersin opines that a reasonable royalty/license fee in this case would be "no less than $54,000." *See id.*,

¶ 64. Recif, Langlois, and Jones filed the pending Motion, seeking to exclude Bersin's opinion.[1] The Motion has been fully briefed and is now ripe for decision.

## II.  APPLICABLE LEGAL STANDARD

Witnesses who are qualified by "knowledge, skill, experience, training or education" may present opinion testimony to the jury. FED. R. EVID. 702; *see, e.g., Whole Woman's Health v. Hellerstedt*, __ U.S. __, 136 S. Ct. 2292, 2316 (2016); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) *(en banc)*; *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623 (5th Cir. 2018). "This is because '[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.'" *Id.* at 623-24 (quoting *Huss*, 571 F.3d at 452).

To be admissible, an expert's proffered testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993); *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016). The expert testimony must be relevant and the expert's proposed opinion must be one that

---

[1]  The Court's practice is not to admit an expert's report into evidence. Instead, the expert's opinions are introduced into evidence through his testimony.

would assist the trier of fact to understand or decide a fact in issue. *See Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015); *Bocanegra v. Vicar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 591-92).

To satisfy the "reliability" prong, a "party seeking to introduce expert testimony must show (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Huss*, 571 F.3d at 452 (citing *Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir. 2007)); *see also Carlson*, 822 F.3d at 199. "Reliability" requires that the proponent of the expert testimony must present some objective, independent validation of the expert's methodology. *See Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013). The objective of the Court's gatekeeper role is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).

The Court's gatekeeping role is no substitute, however, for the adversarial process. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596; *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 852 (5th Cir. 2015).

### III.  ANALYSIS

#### A.  Qualifications

Bersin earned a B.B.A. degree in accounting in 1993 from the University of Houston. He is a Certified Public Accountant ("CPA"), licensed to practice in Texas. He holds the American Institute of Certified Public Accountants' credential of Certified in Financial Forensics ("CFF"), which requires expertise in forensic accounting that CPAs apply in a variety of service areas including damages calculations, forensic analysis, valuations, and bankruptcy. *See* Report, ¶ 2. Bersin also holds the credential of Certified Licensing Professional ("CLP"), which requires "experience, proficiency, knowledge and exposure to licensing and commercialization of intellectual property through active involvement in patenting, marketing, valuation, IP law, negotiation, business development and intellectual asset management." *Id.*, ¶ 3.

Bersin has authored publications and has presented on topics including "the quantification of economic damages, financial analysis, and intellectual property valuation, licensing, and monetization strategies." *Id.*, ¶ 4; Attachment 1.0. He has

been qualified as an expert and provided expert testimony on damages in intellectual property-related litigation in state and federal courts throughout the country, including in the Southern District of Texas. *See id.*, ¶ 1; Attachment 1.1; *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 2013 WL 12137088 (S.D. Tex. Sept. 25, 2013). Bersin has also provided consulting services related to the valuation and licensing of intellectual property assets. *See* Report, ¶ 1. He is currently a Senior Managing Director of FTI Consulting, Inc. ("FTI Consulting"), providing "consulting and expert witness services involving valuation, financial, forensic accounting, and economic damages issues." *Id*.

Recif argues that Bersin is not qualified to offer opinion testimony in this case because (1) he has no special knowledge of oil and gas related subjects; (2) he has no special knowledge of how to calculate a hypothetical license fee; and (3) he has no specialized knowledge of buying or selling license fees. Recif's position is not supported by applicable legal authorities or by the evidence in the record.

### 1. Special Knowledge of Oil and Gas Subjects

Recif argues that Bersin's testimony should be excluded because he has no formal education or specialized knowledge in subjects such as geology, petroleum engineering, geophysics, or oil and gas production. Recif cites no legal authority for its argument that such specialized subject matter expertise is required for a damages

expert in an intellectual property rights context. Instead, it is common within the Fifth Circuit for damages experts in intellectual property cases to be CPAs or economists, not subject matter experts ("SMEs"). *See, e.g., Ultraflo*, 2013 WL 12137088 at *1; *Baisden v. I'm Ready Productions, Inc.*, 2010 WL 1855963, *5 (S. D. Tex. May 7, 2010); *Amigo Broad, L.P. v. Spanish Broad Sys., Inc.*, 2006 WL 5503872, *3 (W.D. Tex. Apr. 21, 2006) (holding that a damages expert "need not have specialized experience in a particular industry). Indeed, a similar objection to Bersin's qualification was rejected in *Ultraflo*, a case in this federal district. In that case, the Court held that "[a]s an accountant, [Bersin] is sufficiently qualified to offer an opinion on the factors and considerations that must be included in a valid damage model and/or reliable damage calculations, regardless of the particular industry at issue." *Ultraflo*, 2013 WL 12137088 at *1. Bersin can qualify as an expert under Rule 702 on the subject of copyright infringement damages notwithstanding his lack of formal education and specific experience in the oil and gas industry.

Recif argues in its Reply that Bersin's methodology "entailed him leaving the accounting world he knew and entering the oil and gas world and the world of buying and selling of licenses." *See* Reply [Doc. # 179], p. 2. This argument is not supported by the record. Bersin consulted with Juniper's technical expert, Wayman Gore, from whom he obtained information regarding the practice by investors to commission

petroleum engineering-consulting firms to produce technical analysis and presentations for potential oil and gas projects, and learned also that payment for such technical analysis and presentations typically includes a license. *See* Report, ¶ 51 fn. 80. After obtaining this technical information from Gore, Bersin solicited quotes from three such petroleum engineering-consulting firms to produce technical analysis and presentations analogous to the Copyrighted Works. Bersin, by relying on Gore's technical expertise, was not required to "leav[e] the accounting world" to form his proffered opinion regarding a reasonable licensing fee in this case.

### 2. Special Knowledge Calculating a Hypothetical License Fee

Recif argues that Bersin's opinion should be excluded because he has no special knowledge regarding how to calculate a hypothetical license fee for technical work not intended for retail sale and similar to the copyrighted works at issue in this case. Recif's argument is legally and factually unsound. Recif cites no legal authority that an expert is not qualified unless his experience is under circumstances virtually identical to those in the case in which he seeks to offer his opinion. Moreover, the record shows that Bersin has twenty-five years experience providing expert services regarding the assessment of damages in intellectual property cases, including calculating damages in copyright infringement cases that involved reasonable royalties. Recif's argument does not support its request to exclude Bersin's testimony.

### 3. Special Knowledge Buying or Selling License Fees

Recif argues that Bersin's opinion should be excluded because he has no personal experience negotiating, buying, or selling license fees. Again, Recif cites no legal authority that a proffered damages expert is not qualified unless he has personal experience in the underlying subject matter, and this Court is aware of none. This argument is without merit, and the Court finds that Bersin is qualified to offer an opinion on the value of a reasonable royalty/license fee in connection with Juniper's copyright infringement and DMCA counterclaims.

### B. Reliability

Bersin calculated Juniper's copyright infringement damages based on a reasonable royalty. A reasonable royalty is the amount "customarily paid for the type of use to which the defendant has put the infringing material" and can be in the form of a "lump sum based on the reasonable value of the work . . .." *See* Report, ¶ 47 (quoting Ross, Terrence P., Intellectual Property Law and Remedies, Law Journal Press, 2020, at "Reasonable Royalty" Sec. 2.02[1][c][ii]). To determine the lump sum reasonable royalty for the Cross-Section Analysis and the Six Map Poster, Bersin solicited quotes from three petroleum engineering-consulting firms to create and license analogous works. *See* Report, ¶¶ 51-52. Nutech Energy Alliance Ltd. ("Nutech") provided a quote of $54,000.00. FTI Consulting Platt Sparks, LLC ("Platt

Sparks") provided a quote of $57,644.00. PGH Petroleum & Environmental Engineers, LLC ("PGH") provided a quote of $89,550.00 to create and license works analogous to the Cross-Section Analysis and the Six Map Poster. Based on Bersin's consideration of the three quotes, Bersin opines that a reasonable royalty/license fee in this case would be "no less than $54,000." *See id.*, ¶ 64.

Recif challenges the reliability of Bersin's methodology. First, Recif argues that Bersin "made up" the methodology because there is no other evidence of damages. Next, Recif argues that Bersin's methodology is unreliable because the precise methodology in virtually exact circumstances has not been used by any other expert and has not been used by Bersin in any other case. Recif argues that Bersin's opinion should be excluded because it is based on unreliable facts. Lastly, Recif argues that the information on which two quotes were based was not analogous to Juniper's copyrighted works. As explained below, none of these arguments supports the exclusion of Bersin's opinion.

### 1. "Made Up" Methodology

Recif argues that Bersin "made up" his methodology because there is no other evidence of damages. Recif's argument is without merit.

The Copyright Act permits recovery of a reasonable royalty. *See* 17 U.S.C. § 504(b). One form of reasonable royalty is the market value of a license fee for the

copyrighted work. *See MGE UPS Sys., Inc.*, 622 F.3d 361, 366 (5th Cir. 2010). A reasonably royalty, expressed as the market value of a license fee, is based on "what a willing buyer would have been reasonably required to pay a willing seller as a licensing fee for the use of the copyrighted material by the infringers." *Id*. There being "concrete" evidence of the market value of a license fee for the copyrighted works through the three quotes Bersin obtained, his methodology is not "made up" but is, instead, a recognized use of a license fee as an acceptable measure of actual damages. *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001).

### 2. Methodology Not Previously Used

Recif relies on Bersin's deposition testimony that he has not previously solicited "market-value quotes from a petroleum engineering consulting firm as a proxy for a license fee for something analogous to the copyrighted works in another case specifically." *See* Motion, p. 13 (quoting Bersin Depo., Exh. 4 to Motion, pp. 137-38). Although Bersin may not be aware of cases in which his specific methodology in the exact circumstances of this case was previously used, Recif has failed to cite any legal authority for its position that reliability requires prior use of the exact methodology in the exact same circumstances. The general methodology of assessing the market value of a license for copyrights works, however, is well-established. *See, e.g., Romanowicz v. Alister & Payne, Inc.*, 2018 WL 4762980, *4

(S.D.N.Y. Aug. 3, 2018); AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS, CALCULATING DAMAGES IN INTELLECTUAL PROPERTY DISPUTES 62, 100 (4th ed. 2020) (noting that "the reasonable royalty to be paid to the plaintiff by the defendant is governed by the particular facts of the case" and addresses "what would a willing buyer have been reasonably required to pay a willing seller for plaintiffs' work?"). Bersin's methodology of soliciting multiple quotes to determine the reasonable royalty/license fee for the copyrighted works based on the market value of obtaining analogous works is a rational, reliable methodology.

### 3. Unreliable Facts

Recif argues that Bersin's opinion should be excluded because it is based on unreliable facts. Specifically, Recif argues that (1) there is no identification of what the Nutech and Platt Sparks quotes were for; (2) Recif already had 25 well logs of its own; (3) it took Juniper employee Chase Schrotel only an estimated 24 hours to create the Cross-Section Analysis and the Six Map Poster; and (4) two of the three firms providing quotes, Platt Sparks and PGH, have a financial interest in the case. None of these arguments supports Recif's request to exclude Bersin's opinion.

The quotes from Nutech and Platt Sparks describe the work covered by their respective quotes. Each firm states that it is providing a quote to create works similar

to Juniper's Copyrighted Works.  *See* Report, ¶¶ 54-55; Attachments 3.0 and 4.0 to Report.

Recif's statement that it already possessed 25 well logs is unsupported by the record and not relevant to the damages calculation.  Twenty-one of the well logs referenced by Recif were purchased when Langlois was preparing his Masters thesis, which was presented in the Spring of 2004, almost thirteen years before Juniper provided its Copyrighted Works to Recif.  There is no evidence in the record that Recif still possessed those well logs in 2018, and they were not produced during discovery.  More importantly, whether or not Recif already possessed certain well logs, the relevant issue is the calculation of a reasonable royalty/license fee for Juniper's Copyrighted Works.  Recif used the Cross-Section Analysis and the Six Map Poster in their entirety, not something else.  Therefore, the reasonable royalty/license fee should be calculated based on Recif's actual infringing use.

Platt Sparks and PGH each provided a quote based on an estimate of the number of hours needed to create work analogous to Juniper's Copyrighted Works.  Schrotel estimated that he created the Cross-Section Analysis and the Six Map Poster in 24 hours.  The record establishes that Bersin took Schrotel's estimate into account.  It is uncontroverted that Schrotel did not maintain contemporaneous time records and that he created the Copyrighted Works for internal investment considerations at

Juniper, not for use by a third party. Therefore, as Bersin explains, Schrotel's estimated time would not have included levels of review and refinement necessary before a similar work would be delivered by Platt Sparks and/or PGH to an outside client. *See* Report, ¶ 61. Additionally, Nutech based its quote on the number of wells, not the number of hours requires to complete the work. Therefore, Schrotel's estimate is irrelevant to Bersin's consideration of the Nutech quote.

Recif notes that Bersin is a Director at FTI Consulting, which owns a subsidiary that operates Platt Sparks. Bersin testified under oath that Platt Sparks is an independent legal entity with no financial interest in this case, and was not told that Bersin was retained by Juniper or any other information about the litigation. *See* Bersin Depo., Exh. 11 to Response, pp. 135-136. PGH is owned by Wayman Gore, Juniper's technical expert in this case. Recif concedes that neither Bersin's nor Gore's compensation in this case is contingent on Juniper's success. Recif argues only that their reputation may be negatively affected should Juniper not prevail on its copyright infringement claim. *See* Motion, p. 19. This does not create a disqualifying conflict of interest.

### 4.     Two Quotes Not for Analogous Work

Recif argues that the quotes from Nutech and Platt Sparks were not for analogous works because they did not identify the same 32 wells for the cross-section

analysis as were used for Juniper's Copyrighted Works. As Recif explains in its Reply, this argument is based on the assertion that different wells have different value. *See* Reply, p. 9. The relevant inquiry, however, is not whether the wells themselves have different value. Instead, the relevant issue is whether it would cost basically the same to have any well analyzed. There is no evidence that it generally costs different amounts to analyze different well data. Indeed, Nutech's quote is based on a flat rate of $1,500 per well. Therefore, the specific wells used by Nutech and Platt Sparks for their quotes are not relevant to the reliability of Bersin's damages opinion.[2]

## IV.   CONCLUSION AND ORDER

Bersin is well-qualified to offer an opinion regarding copyright damages, specifically the market value of a reasonable licensing fee. He used a rational, reliable methodology to calculate the reasonable value of the lost license fee. Bersin is qualified to offer expert testimony under Rule 702, and his opinions in this case are relevant and reliable. Recif can vigorously cross-examine Bersin, and the weight to which his opinion is entitled can be determined by the jury. As a result, it is hereby

---

[2] The Court notes that if it were to exclude the Nutech and Platt Sparks quotes, the remaining quote from PGH was significantly higher and would, therefore, support Bersin's opinion that a reasonable royalty/license fee in this case would be no less than $54,000.

**ORDERED** that Recif's Motion to Exclude the Testimony of Brent K. Bersin [Doc. # 139] is **DENIED**.

SIGNED at Houston, Texas, this 18th day of **September, 2020**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE