United States District Court
Southern District of Texas
**ENTERED**
September 24, 2020
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| RECIF RESOURCES, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-2953 |
| | § | |
| JUNIPER CAPITAL ADVISORS, L.P., | § | |
| *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This case involves the aftermath of unsuccessful discussions for Plaintiff and Defendants to work together on an oil-and-gas development project. The case is now before the Court on three motions seeking summary judgment in connection with Defendants' copyright infringement and related counterclaims.[1] The first is the Motion for Summary Judgment on Copyright Counterclaims ("Recif's First Motion") [Doc. # 128] filed by Counter-Defendants Recif Resources, LLC ("Recif"), Paul C. Langlois, and Steven M. Jones (collectively, "Recif"). Counter-Plaintiffs Juniper

---

[1] In the First Amended Complaint [Doc. # 52], Recif asserts a breach of contract claim based on Juniper's alleged violation of the parties' Confidentiality Agreement, and a trade secret misappropriation claim based on Juniper's alleged misuse of Recif's proprietary information. Recif also asserts fraud, civil conspiracy, unfair competition, and other state law claims. Recif's claims against Juniper are based on a distinct factual background, and the dispositive motions relating to Recif's claims will be addressed separately.

Capital Advisors, L.P., Juniper Capital Investments, LLC, Juniper Capital III, LP, and State Line Exploration, LLC (collectively, "Juniper") filed an Opposition [Doc. # 134] to Recif's First Motion, and Recif filed a Reply [Doc. # 142]. Also pending is Recif's Motion for Partial Summary Judgment on Copyright Counterclaims ("Recif's Second Motion") [Doc. # 138], to which Juniper filed an Opposition [Doc. # 161], and Recif filed a Reply [Doc. # 177]. Additionally, Juniper filed a Motion for Partial Summary Judgment (Copyright Infringement and DMCA) ("Juniper's Motion") [Doc. # 137], to which Recif filed a Response [Doc. # 163], and Juniper filed a Reply [Doc. # 176].

Having reviewed the record and the applicable legal authorities, the Court **denies** both of Recif's Motions. Juniper's Motion is **granted**.

## I.     BACKGROUND

In October 2017, Kevin Voelte introduced Recif to Juniper. Voelte was an investment banker who was assisting Recif in obtaining private equity investment for an oil-and-gas development project in the Louisiana Austin Chalk.[2]

In February 2018, Juniper created a cross-section map and corresponding well log interpretations ("Cross-Section Analysis") of oil-producing formations across Texas, Louisiana, and Mississippi, including formations in the Austin Chalk and in

---

[2]     The Louisiana Austin Chalk is a geological formation of underground chalk located in central Louisiana and southwestern Mississippi. It is part of the larger Austin Chalk formation.

the Tuscaloosa Marine Shale.[3]  Juniper also created six region-wide maps displaying its analysis related to the region, which Juniper then placed on a large poster ("Six Map Poster").  On February 22, 2018, Juniper provided the Cross-Section Analysis, other geologic maps, and a copy of the Six Map Poster to Recif.

On May 1, 2018, Juniper ended discussions with Recif regarding working together on Recif's oil-and-gas project.  On May 2, 2018, Recif's principal Steven Jones sent an email to Juniper's Kevin Cumming asking if Juniper would consider covering a $5,000.00 expense "associated with land and legal work done in service of the NewCo[4] partnership."  *See* May 2 Email [Doc. # 161-16].[5]  Cumming responded by an email on May 3, 2018 ("May 3 Email"), which read in its entirety:

> Steven, I've discussed with my partners, and we'll be happy to cover 50% of the costs related to the land and legal work, up to $2,500 net to Juniper ($5,000 in aggregate).  Since both parties were making a good faith effort on this, we're fine with a 50/50 split.  And you guys will of course still have access to this information and with your release from

---

[3]    The Tuscaloosa Marine Shale is a geological formation along the Louisiana/Mississippi border.  In some areas, the Tuscaloosa Marine Shale formation is below the Louisiana Austin Chalk formation.

[4]    NewCo was the company to be created by Recif and Juniper to own assets associated with their investment in various oil and gas properties located in Southern Louisiana.

[5]    Jones's May 2 email to Cumming, sent after Juniper terminated its relationship with Recif on May 1, 2018, stated simply:

> Kevin, Paul and I have discussed and wanted to know if Juniper would consider incurring cost associated with land and legal work done in service of the NewCo partnership?  The collective amount is circa $5K.

exclusivity from our term sheet, you'll also have the ability to use that information to try to find new sources of funding.  And again, please let me know if I can make any introductions for you guys.  Happy to do so.

Please send us invoices for the expenses you incurred, and we'll cut a check for 50%. Thanks guys,

Kevin

May 3 Email [Doc. # 161-16].

Juniper alleges, and Recif does not dispute, that Recif thereafter used the Cross-Section Analysis in a presentation "to at least one potential investor to request a substantial private equity investment." *See* Third Amended Counterclaim [Doc. # 69], ¶ 73.  For its second count of copyright infringement, Juniper alleges, and Recif does not dispute, that Recif distributed the Six Map Poster to at least one party who was not an owner or employee of Recif.  *See id.*, ¶ 86.  Juniper alleges, and Recif does not deny, that Recif removed Juniper's name and logo from the Cross-Section Analysis, and inserted Recif's own logo.  Juniper obtained federal copyright registrations for the Cross-Section Analysis and the Six Map Poster (the "Copyrighted Works").  The registration for the Cross-Section Analysis was issued effective July 14, 2019, and the registration for the Six Map Poster was issued effective January 8, 2020.  Juniper then filed a copyright infringement counterclaim in this case against Recif, Langlois, and Jones.  Juniper also asserted a claim under the Digital Millennium Copyright Act

("DMCA") based on Recif's intentional removal of Juniper's copyright management information ("CMI") from the Cross-Section Analysis.

In Recif's First Motion, Recif argues that statutory damages are not available for Juniper's copyright claims, that there is no evidence of actual damages, and that there is no evidence that Recif violated the DMCA with the required *mens rea*. In Recif's Second Motion, Recif argues that its use of Juniper's Copyrighted Works was *de minimis* use and was authorized by an implied license. Juniper seeks summary judgment on Recif's liability for the copyright infringement and DMCA claims, as well as summary judgment that Langlois and Jones are personally liable. The Motions have been fully briefed and are now ripe for decision.

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to its case and on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  FED. R. CIV. P.  56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d

at 594.  Where the movant bears the burden of proof at trial on the issues at hand, it

"bears the initial responsibility of demonstrating the absence of a genuine issue of

material fact with respect to those issues." *Transamerica Ins. Co. v. Avenell*, 66 F.3d

715, 718 (5th Cir. 1995); *see also Brandon v. Sage Corp.*, 808 F.3d 266, 269-70 (5th

Cir. 2015); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

　　　To obtain summary judgment on an affirmative defense, a defendant must

establish the defense's essential elements. *See Wilson v. Epps*, 776 F.3d 296, 299 (5th

Cir. 2015) (citing *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).  There exists

a dispute precluding summary judgment if the "evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Wilcox v. Wild Well Control, Inc.*,

794 F.3d 531, 535-36 (5th Cir. 2015) (citations omitted).  The facts and the inferences

to be drawn from them must be reviewed in the light most favorable to the nonmoving

party. *See Wilson*, 776 F.3d at 299.  However, factual controversies are resolved in

favor of the non-movant "only where there is an actual controversy, that is, when both

parties have submitted evidence of contradictory facts." *Squyres v. Heico Companies,*

*LLC,* 782 F.3d 224, 230-31 (5th Cir. 2015).  The non-movant "cannot rely on the

allegations in the pleadings alone." *Pioneer Exploration, LLC v. Stadfast Ins. Co.*,

767 F.3d 503, 511 (5th Cir. 2014).  Likewise, "unsubstantiated assertions that a fact

issue exists will not suffice" to satisfy the non-movant's burden.  *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012).

For summary judgment, the initial burden falls on the movant to identify areas in which there is an "absence of a genuine issue of material fact."  *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012).  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action."  *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit &*

*Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'"  *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).  Although the Court may make no credibility determinations or weigh any evidence, the Court is not required to accept conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence.  *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075.   Instead, the nonmoving party must present specific facts that show "the existence of a genuine issue concerning every essential component of its case."  *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted).  In the absence of any proof, the court will not assume that the non-movant could or would prove the

necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) ("A party's self-serving and unsupported claim that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud." (citation omitted)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (internal citations and quotations omitted); *Williams v. Valenti*, 432 F. App'x 298, 302 (5th Cir. 2011).

### III.   **COPYRIGHT INFRINGEMENT CLAIMS**

#### A.   **Elements**

"To prevail on a copyright infringement claim, a plaintiff must show (1) ownership of a valid copyright and (2) unauthorized copying." *Peel & Co., Inc. v. The Rug Mkt.*, 238 F.3d 391, 394 (5th Cir. 2001); *Stross v. Redfin Corp.*, 730 F. App'x 198, 202 (5th Cir. 2018); *see also Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 373 (5th Cir. 2020); *Baisden v. I'm Ready Productions, Inc.*, 693 F.3d 491, 499 (5th Cir. 2012).  Juniper has presented undisputed evidence that it owns valid copyrights in the Copyrighted Works.  Juniper has also presented evidence that Recif copied the Copyrighted Works, and Recif has presented no evidence or argument disputing Juniper's evidence on these issues.  Recif argues that it is entitled to summary judgment on Juniper's copyright infringement counterclaims because (1) Juniper has no evidence of actual damages, (2) Recif's copying and use of Juniper's Copyrighted Works was authorized, and (3) the disclosure of the Six Map Poster to Renee Porter was not a disclosure to a third party.

### 1.     No evidence of actual damages

Recif argues that Juniper has failed to present evidence of actual damages.[6]  The Copyright Act permits recovery of actual damages in the form of a reasonable royalty. *See* 17 U.S.C. § 504(b).  A reasonable royalty can be based on the market value of a license fee for the copyrighted work.  *See MGE UPS Sys., Inc.*, 622 F.3d 361, 366 (5th Cir. 2010).  A reasonably royalty, expressed as the market value of a license fee, is based on "what a willing buyer would have been reasonably required to pay a willing seller as a licensing fee for the use of the copyrighted material by the infringers."  *Id*.

Recif's argument that Juniper has no evidence of actual damages is based on its position that testimony from Juniper's damages expert, Brent Bersin, should be excluded.  The Court has rejected Recif's argument.  *See* Memorandum and Order [Doc. # 193].  Therefore, Juniper has presented evidence through its expert of actual damages in the form of a reasonable royalty/license fee resulting from Recif's alleged copyright infringement.  Recif's argument to the contrary, asserted before the Court's ruling on Recif's motion to exclude Bersin's testimony, is without merit.

---

[6]     Recif argues also that Juniper is not entitled to recover statutory damages for the copyright infringement claims because the infringement occurred prior to the registration of the copyrights.  Juniper does not seek statutory damages in connection with its copyright infringement claims.

### 2. Permission to Use Copyrighted Works

Recif argues that in the May 3 Email from Juniper's Kevin Cumming to Recif's principal Steven Jones, Juniper authorized Recif to copy and use the Copyrighted Works. The May 3 Email was sent by Cumming in response to an email on May 2, 2018, from Jones asking if Juniper would consider covering a $5,000.00 expense "associated with land and legal work done in service of the NewCo partnership." *See* May 2 Email [Doc. # 161-16]. Cumming responded in the May 3 Email as follows:

> Steven, I've discussed with my partners, and we'll be happy to cover 50% of the costs *related to the land and legal work*, up to $2,500 net to Juniper ($5,000 in aggregate). Since both parties were making a good faith effort on this, we're fine with a 50/50 split. And you guys will of course still have access to *this information* and with your release from exclusivity from our term sheet, you'll also have the ability to use *that information* to try to find new sources of funding. And again, please let me know if I can make any introductions for you guys. Happy to do so.
>
> Please send us invoices for the expenses you incurred, and we'll cut a check for 50%. Thanks guys,
>
> Kevin

May 3 Email [Doc. # 161-16] (emphasis added). It is undisputed that the $5,000.00 for "land and legal work" was an expense incurred by Recif and related to the ownership of certain leases, not to any geological analysis. Recif argues, however, that this May 3 Email granted it authorization to use the Copyrighted Works.[7]

---

[7]   As discussed more fully below, Recif also relies on the May 3 Email to support its
(continued...)

Jones testified that Recif had the "impression" from the May 3 Email that it was authorized to use the Copyrighted Works. *See* Jones Depo. [Doc. # 163-1], p. 234; p. 289. Similarly, Langlois stated in his Affidavit that, based on the May 3 Email, he "understood" that Recif had permission to use all the information, including the Copyrighted Works, that Juniper had given Recif. *See* Langlois Aff. [Doc. # 163-2], ¶¶ 2-3.

While Recif's principals, Langlois and Jones, may have believed they had authorization to use the Copyrighted Works, there is no evidence that such a belief was grounded in fact or was reasonable. Recif asked Juniper to share in the $5,000.00 expense that Recif had incurred for the "land and legal work" -- work unrelated to Juniper's creation of the Copyrighted Works. Juniper agreed, noting that Recif would "have access to *this information*." *See* May 3 Email. Cumming mentioned also that with Recif's "release from exclusivity from [the parties'] term sheet," Recif would "have the ability to use that information to try to find new sources of funding." *See id.* The exclusivity provision of the Term Sheet provides that, for a period of 60 days after execution of the Term Sheet, neither Recif nor any of its Management Team Members would --

---

[7]     (...continued)
         affirmative defense of an implied license and its argument that there is no evidence
         it had the required *mens rea* for the DMCA claim.

> solicit, encourage or enter into any agreement, discussion, or negotiation, or directly or indirectly provide information to, or solicit, encourage, entertain or consider any inquiries or  proposals from, any person with respect to a similar transaction or any transaction involving the Properties . . ..

*See* Term Sheet [Doc. # 161-6].  There is no statement in the May 3 Email that Recif will similarly be released from the separate confidentiality provision in the Term Sheet.[8]

There is no suggestion in the May 3 Email that Juniper is authorizing  Recif to use the Copyrighted Works, and Recif has presented no evidence other that its own subjective belief that the May 3 Email said something that it clearly did not.  A subjective belief is insufficient to raise a genuine issue of material fact and avoid summary judgment.  *See, e.g., Badgerow v. REJ Properties, Inc.*, __ F.3d __, 2020 WL 5494911, *4 (5th Cir. Sept. 11, 2020) (employment context); *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (employment context); *Malmay v. Sherman*, 2003 WL 22077786, *6 (E.D. La. Sept. 8, 2003) (insurance context).

Recif's proffered understanding of the May 3 Email is evidence of nothing more than its subjective and uncommunicated misunderstanding, which is insufficient

---

[8]     The Term Sheet's confidentiality provision is discussed more fully in Section III.B.3. below in connection with Recif's assertion of the affirmative defense of implied license.

to preclude summary judgment.  *See Lagniappe Lighting, Inc. v. Bevolo Gas & Elec. Lights, Inc.*, 2013 WL 3816591, *5 (S.D. Tex. July 22, 2013) (Ellison, J.) (trademark context).  In *Bevolo*, a case the Court finds very persuasive, the parties agreed in connection with the termination of their relationship that Lagniappe would cease using all "Bevolo marks."  *Id.* at *4.  Lagniappe argued that it understood the agreement to require Lagniappe to remove all references to "Bevolo" only, not to stop using all "Bevolo marks."  The Court held that the term "Bevolo marks" unambiguously referred to Bevolo's trademarks. *Id.* at 5.  The Court held that Lagniappe's subjective belief that it was required only to stop using the "Bevolo" name could not change the actual, unambiguous terms offered in the termination letter.  *See id.*

Recif's evidence that its pricipals, Langlois and Jones, subjectively believed that the May 3 Email granted them permission to use Juniper's Copyrighted Works does not raise a genuine issue of material fact regarding whether the unambiguous email applied beyond the clear, express terms of the email exchange.  There being no genuine issue of material fact regarding whether Juniper authorized Recif to use the Copyrighted Works, Juniper is entitled to summary judgment on the "unauthorized copying" element of the copyright infringement counterclaims.

### 3.     Distribution of Six Map Poster to Renee Porter

With reference only to the copyright infringement claim based on the Six Map Poster, Recif argues that distribution to Renee Porter was not distribution to a third party because Porter was considered an "integral member" of Recif.  It is undisputed that Porter was not an employee, officer, director, or other legal representative of Recif.  Recif has cited no legal authority that publication of the Copyrighted Works to an unaffiliated colleague, however trusted, is exempt from the copyright laws.  Porter's friendship with the Recif principals does not provide a defense to, or preclude summary judgment on, Juniper's copyright infringement claim based on distribution of the Six Map Poster.

### B.     <u>Affirmative Defenses</u>

In Recif's Second Motion, Recif asserts for the first time the affirmative defenses of *de minimis* use and implied license.

### 1.     Waiver

Juniper argues that Recif waived the affirmative defenses by failing to plead them in the Answer.  In Recif's Answer to Amended Counterclaims [Doc. # 60], there are no affirmative defenses asserted.  In response to Juniper's Third Amended Counterclaim [Doc. # 69], Langlois and Jones[9] raise several affirmative defenses, but

---

[9]     The Answer to Juniper's Third Amended Counterclaim [Doc. # 117] was filed on
(continued...)

do not plead the affirmative defenses of *de minimis* use or implied license.  *See* Answer to Third Amended Counterclaim [Doc. # 117].  It is uncontested that Recif did not raise these two affirmative defenses until they filed Recif's Second Motion on July 20, 2020.

Affirmative defenses are to be pleaded in a defendant's answer.  *See* FED. R. CIV. P. 8(b)(1)(A); 8(c)(1).  "Failure to timely plead an affirmative defense may result in waiver and the exclusion of the defense from the case."  *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014).  In the Fifth Circuit, "an affirmative defense is not waived if the defendant raised the issue at a pragmatically sufficient time and [the plaintiff] was not prejudiced in its ability to respond."  *Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009); *Skipper v. A&M Dockside Repair, Inc.*, 2020 WL 5550997, *1 (5th Cir. Sept. 16, 2020).

An affirmative defense that is raised in a motion to dismiss can be sufficiently timely to avoid waiver.  *See Cooper v. Bank of New York Mellon*, 713 F. App'x 368 (5th Cir.), *cert. denied*, 139 S. Ct. 644 (2018).  Similarly, an affirmative defense that is raised before the close of discovery and well before trial may avoid waiver.  *See Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 772 (5th Cir. 2017).  In this case, the affirmative defenses were not asserted until the case had been pending

---

[9]      (...continued)
         behalf of Langlois and Jones only.

in federal court for almost a year.  The affirmative defenses were not raised in Recif's

Motion to Strike the Third Amended Counterclaim [Doc. # 75], in which Recif asked

the Court to strike the amended counterclaim because it was filed on January 17,

2020, not on the January 15, 2020 deadline in the Court's Docket Control Order.[10]  As

noted above, the defenses were not raised in Langlois and Jones's Answer.  The two

affirmative defenses of de *minimis* use and implied license were not raised in Recif's

First Motion seeking summary judgment on the copyright counterclaims.   The

affirmative defenses were not raised until July 20, 2020, when Recif filed its Second

Motion seeking summary judgment on the copyright-related counterclaims.  This was

after the close of discovery on July 3, 2020.  The Court finds that the affirmative

defenses were not raised in a "pragmatically sufficient time."

"[T]he prejudice inquiry considers whether the plaintiff had sufficient notice

to prepare for and contest the defense."  *Smith v. Travelers Cas. Ins. Co. of Am.*, 932

F.3d 302, 309 (5th Cir. 2019).  As noted above, the affirmative defenses were not

raised until after the close of discovery.  Although the Court could have reopened the

---

[10]     Recif argued that an email between the parties granted Recif an extension to
January 17, 2020, of the amendments to pleading deadline, but did not grant Juniper
a similar extension.  The Court denied the Motion to Strike, noting that the email
correspondence between counsel showed that Recif requested "an agreed extension
of our deadline to amend *our* pleadings and join parties."  *See* Memorandum and
Order [Doc. # 83], p. 2.  The Court noted that there was only one Plaintiff and,
therefore, it was not unreasonable for Juniper to interpret the emailed request as one
to extend the single deadline that applied to both Plaintiff and Defendants.  *See id.*

discovery deadline for Juniper to conduct discovery on these two new affirmative defenses, the prejudice to Juniper in the form of undue surprise would simply have been replaced by the prejudice to Juniper from additional delay and expense.

Recif has not demonstrated that it raised the affirmative defenses at a pragmatically sufficient time and that Juniper was not prejudiced by the delay. As a result, the Court concludes that Recif has waived the affirmative defenses of *de minimis* use and implied license. Nonetheless, the Court will address the two defenses on the merits.

### 2. *De Minimis* Use

Recif argues that its use of the Copyrighted Works was *de minimis* because it "made up a small fraction of the pitch" made to a prospective investor during multiple meetings. *See* Recif's Second Motion, p. 6. Recif states also that the "origin" of the Copyrighted Works was a collaborative process. *See id.* This statement apparently refers to the Copyrighted Works being originally created during the time Recif and Juniper were discussing the possibility of working together, for there is no evidence that Recif participated in creating the Cross-Section Analysis or the Six Map Poster.

The doctrine of *de minimis* use provides that the law does not impose legal consequences for unauthorized copying that is sufficiently trivial. *See Louisiana Contractors Licensing Serv., Inc. v. Am. Contractors Exam Servs., Inc.*, 13 F. Supp.

3d 547, 552 (M.D. La. 2014), *aff'd*, 594 F. App'x 243 (5th Cir. 2015).  As stated by the Ninth Circuit, "[f]or an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement."  *Newton v. Diamond*, 388 F.3d 1189, 1192-93 (9th Cir. 2004).  "This means that even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial."  *Id.* at 1193.

In determining whether or not the allegedly infringing work falls below the quantitative threshold, "courts often look to the amount of the copyrighted work that was copied, as well as, (in cases involving visual works), the observability of the copyrighted work in the allegedly infringing work."  *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir.1998); *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 639 (S.D. Tex. 2007).  In *Newton*, for example, the defendant incorporated six-seconds of the plaintiff's copyrighted song into its own song.  *See Newton*, 388 F.3d at 1192.  In *Louisiana Contractors*, the defendant copied 14 of 1,083 multiple-choice questions from the plaintiff's copyrighted material.  *See Louisiana Contractors*, 13 F. Supp. 3d at 554.

In the final analysis, it is important to remember that "no plagiarist can excuse the wrong by showing how much of *his work* he did not pirate."  *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2nd Cir.1936) (emphasis added).

"Nor can a plagiarist excuse the wrong by showing how much of *the copied work* he did not pirate." *Compaq Computer Corp. v. Ergonome, Inc.*, 137 F. Supp. 2d 768, 779 (S.D. Tex. 2001) (emphasis added).

In this case, Recif admits that it used the entire Six Map Poster in a "pitch" to Outfitters Energy Capital ("Outfitters") on May 23, 2018. *See* Recif's Second Motion, p. 3. Recif admits also that, at a different meeting with Outfitters in June 2018, Recif used a 24-slide PowerPoint presentation that included 8 slides from the Copyrighted Works. *See id.* The 8 slides from the Copyrighted Works constituted one-third of the PowerPoint presentation. As a matter of law, these uses of the Copyrighted Works were significantly above the level of "trivial." The *de minimis* use affirmative defense is without merit and does not preclude summary judgment for Juniper on its copyright infringement counterclaims.

### 3.  Implied License

Recif asserts that it had an implied license to use the Copyrighted Works. Because the existence of a license authorizing the use of copyrighted material is an affirmative defense to an allegation of infringement, Recif bears the burden of proving that such a license exists. *See Carson v. Dynegy, Inc.*, 344 F.3d 446, 451 (5th Cir. 2003). The primary focus of any "implied license" analysis is the intent of the copyright owner. *See Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 644 (S.D.

Tex. 2007) (citing *John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 40 (1st Cir. 2003)). "Without intent [to permit the use], there can be no implied license." *Straus*, 484 F. Supp. 2d at 644 (quoting *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998)).

An implied nonexclusive license can be created when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir.1996)); *see also Malibu Media, LLC v. Martin*, 2019 WL 3802678, *2 (S.D. Tex. Aug. 13, 2019).  There is no evidence that Recif requested that Juniper create the Copyrighted Works at issue, or that Juniper intended for Recif to copy and distribute its work.

An implied license can arise "in other circumstances where the totality of the parties' conduct support[s] such an outcome." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 501 (5th Cir. 2012).  Courts in this federal district have on occasion examined three factors to determine whether an implied nonexclusive license exists:

> (1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts . . . providing that copyrighted materials could only be used with the creator's future involvement or express permission; and

(3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible.

*See, e.g., Preston Wood & Assocs., LLC v. RZ Enterprises USA, Inc.*, 2018 WL 2722328, **5-6 (S.D. Tex. June 6, 2018); *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, 2010 WL 4366990, *40 (S.D. Tex. Oct. 27, 2010). In this case, the parties were discussing entering into a long-term relationship when Juniper provided its Copyright Works to Recif, although the discussions were not fruitful and ended after a short time. Regarding the second prong of the analysis, Juniper required Recif to sign a Term Sheet that contained a confidentiality provision stating:

> Recif agrees to keep . . . any and all information otherwise made available to Recif and its employees, representatives and agents by Juniper and its affiliate's employees, representatives, or agents (such information, "Confidential Information"), in strict confidence and will not disclose Confidential Information without the consent of Juniper, except to those representatives and advisers that have a need to know and are already subject to confidentiality obligations. Similarly, Recif agrees that it shall not use (or cause to be used) any Confidential Information for any purpose other than its review of a possible transaction with Juniper in the manner contemplated by this term sheet. Upon written request of Juniper, Recif shall promptly return to Juniper or destroy all Confidential Information.

Term Sheet [Doc. # 161-6].

Recif relies on the May 3 Email as evidence of conduct by Juniper indicating that Recif's use of the Copyrighted Works was permissible. As was true in connection with the copyright infringement requirement that copying and disclosure be

unauthorized, Recif's subjective belief that the May 3 Email indicated Juniper's intent

to grant permission for Recif to use the Copyrighted Works is not supported by any

admissible evidence. Recif has not raised a genuine issue of material fact on the

existence of an implied license.

Under any recognized test for establishing the existence of an implied license,

Recif has failed to present evidence that raises a genuine issue of material fact that

Juniper intended to grant Recif an implied license to copy and use the Copyrighted

Works. Recif's request for summary judgment on the existence of an implied license

is denied.

## IV.   **DMCA CLAIM**

### A.   **Elements**

Section 1202(b) of the DMCA provides that:

> No person shall, without the authority of the copyright owner or
> the law --
> (1) intentionally remove or alter any copyright management
> information, . . .
> knowing, or . . . having reasonable grounds to know, that it will
> induce, enable, facilitate, or conceal an infringement of any right
> under this title.

17 U.S.C. § 1202(b)(1); *see also Ranco Indus., Inc. v. Bos. Floor Mats*, 2011 WL

1237938, *2 (S.D. Tex. Mar. 31, 2011). Copyright management information ("CMI")

includes, *inter alia*, "the name of, and other identifying information about, the author

of a work" and the "name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c)(2) and (3). "A section 1202(b)(1) violation occurs when a person (i) without authority of the copyright owner or the law (ii) intentionally removes or alters any copyright management information (iii) knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement of the federal copyright laws." *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 927 (6th Cir. 2003).

In this case, there is no dispute that Recif intentionally removed Juniper's CMI from the Copyrighted Works without Juniper's permission. Recif argues that there is no evidence that it removed Juniper's CMI "knowing or having reasonable grounds to know" that it would "induce, enable, facilitate, or conceal" copyright infringement. Recif relies on legal authority regarding evidence of intent to induce infringement by others. In this case, it is Recif's own infringement of the Copyrighted Works that is being facilitated and concealed. Juniper has presented uncontroverted evidence that Recif intentionally removed Juniper's CMI and then intentionally added Recif's own logo to the Copyrighted Works. Juniper has presented evidence that Voelte, Recif's investment banker, questioned Recif's prior failures to identify the source of its information, writing "Source???" on Recif's presentation whenever the source was not

disclosed.  *See* Voelte Depo., Exh. 1 to Response [Doc. # 134], p. 13.  This served to remind Recif of the importance of having accurate source information on documents. Recif clearly had reasonable grounds to know that removing Juniper's CMI and replacing it with Recif's logo "would have wrongfully implied that [Recif] had permission to use the [Copyrighted Works], thus concealing its infringement."  *See Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 173 (2d Cir. 2020).

Again, Recif relies on the May 3 Email as evidence that it did not know or have reasonable grounds to know that it was engaging in copyright infringement and, therefore, there was no infringement to enable, facilitate, or conceal.  Again, Recif's reliance on the May 3 Email is unavailing.  As discussed above, Juniper in the May 3 Email unambiguously agreed to split the $5,000.00 cost of the "land and legal work," and Cumming stated that Recif would be allowed to access and use "this information."  *See* May 3 Email.  There is nothing in the May 3 Email that suggests Juniper is authorizing Recif to copy and use Juniper's Copyrighted Works.  The May 3 Email is not evidence that Recif did not know *or have reasonable grounds to know* that it was engaging in copyright infringement and that its intentional removal of Juniper's CMI (and replacing it with Recif's own logo) would enable, facilitate, and/or conceal Recif's infringement.

Juniper has presented evidence that Recif, without Juniper's permission, intentionally removed Juniper's CMI from the Copyrighted Works, knowing or having reasonable grounds to know that it would induce, enable, facilitate, or conceal Recif's own copyright infringement. Recif has failed to present evidence to the contrary that raises a genuine issue of material fact. As a result, Juniper is entitled to summary judgment on Recif's liability for violation of the DMCA.

## B.  No Statutory Damages Available

Recif argues that Juniper is not entitled to an award of statutory damages on the DMCA claim because the DMCA violation predated Juniper's copyright registration. Recif relies on 17 U.S.C. § 412, which provides:

> In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for --
>
> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412.  Recif argues that this statute applies to the DMCA, 17 U.S.C. § 1203.  Recif's argument is unpersuasive.

Juniper does not seek statutory damages under Sections 504 and 505 but, instead, seeks them under § 1203.  A person who violates § 1202 is subject to the civil remedies set forth in § 1203.  *See* 17 U.S.C. § 1203(c).  "Section 1203 has notable parallels *and divergences* with § 504."  *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 276 (5th Cir. 2020) (emphasis added).

A plain reading of the DMCA does not indicate that it is subject to the registration requirement found in 17 U.S.C. § 411(a).  *See Diamondback Indus., Inc. v. Repeat Precision, LLC*, 2019 WL 5842756, *2 (N.D. Tex. Nov. 7, 2019).  The registration requirement pertains to "civil action[s] for infringement of the copyright." *See id.* (quoting 17 U.S.C. § 411(a)).  A DMCA action under Section 1202(b) is not an action for copyright infringement, but rather for the improper removal or alteration of CMI.  *See id.* (citing 17 U.S.C. § 1202(b)).  Therefore, no prior registration is required under the DMCA.

Moreover, a plain reading of § 412 "demonstrates that the statute applies only to statutory damages and attorney's fees sought under Sections 504 and 505. Section 412 says nothing about registration prior to the infringement as a prerequisite of receiving statutory damages and attorney's fees sought under Section 1203."

*Design Ideas, Ltd. v. Meijer, Inc.*, 2018 WL 3545157, *10 (C.D. Ill. July 23, 2018); *see also Heritage Homes, LLC v. Benjamin Custom Homes, LLC*, 2019 WL 4934184, *4 (D.N.D. Oct. 7, 2019) (dismissing claim for statutory damages under § 505 where infringement occurred prior to copyright registration, but allowing claim for statutory damages under the DMCA).  Consequently, Juniper is not barred from receiving statutory damages on its DMCA claim.

## V.   **PERSONAL LIABILITY OF LANGLOIS AND JONES**

Juniper seeks summary judgment that Langlois and Jones have personal liability for the infringement of the Cross-Section Analysis, and that Langlois also has personal liability for infringement of the Six Map Poster and the DMCA violation. Individual officers acting for a corporation can have personal liability for copyright infringement.  *See Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1350 (5th Cir. 1994), opinion supplemented on denial of reh'g, 46 F.3d 408 (5th Cir. 1995); *Maner v. Reprod. Research Techs., LP*, 2015 WL 6744326, *4 (S.D. Tex. Nov. 4, 2015) ("Cases have held that all participants in copyright infringement are jointly and severally liable as tortfeasors."); *see also Mead Johnson & Co. v. Baby's Formula Service, Inc.*, 402 F.2d 19, 23 (5th Cir. 1968).  The same principle has been applied in DMCA cases.  *See DISH Network LLC v. New Era Elecs. Corp.*, 2013 WL 5486798, *5 (C.D. Cal. Sept. 27, 2013) (and cases cited therein); *Microsoft Corp.*

*v. Silver Star Micro, Inc.*, 2008 WL 115006, *8 n.8 (N.D. Ga. Jan. 9, 2008) (personal liability under the DMCA determined in the same manner as personal liability for violations of the Copyright Act) (citing *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004); *Gordon v. Nextel Commc'ns & Mullen Adver., Inc.*, 345 F.3d 922, 925 (6th Cir. 2003)).

Juniper has presented uncontroverted evidence that Jones and Langlois are and have always been Recif's only owners and employees. Juniper has presented evidence that Langlois and/or Jones participated in the creation and distribution of Recif's infringing works. Recif in its Response [Doc. # 163] failed to present evidence or argument in opposition to Juniper's request for summary judgment regarding Langlois and Jones's personal liability for the copyright infringement and the DMCA violation. Juniper's Motion for Summary Judgment on this issue is granted.

## VI.    **CONCLUSION AND ORDER**

Based on the foregoing, Juniper has presented evidence in support of its copyright infringement and DMCA counterclaims. Recif has not presented evidence that raises a genuine issue of material fact in opposition to those counterclaims. The unambiguous language in the May 3 Email refutes Recif's arguments based on that email. Recif's new affirmative defenses, even if not waived, are not factually and legally supported. Statutory damages are not requested in connection with the

copyright infringement claims, but are available for the DMCA claim.  Langlois and Jones have personal liability for Recif's copyright infringement and DMCA violations to the extent requested by Juniper.  Accordingly, it is hereby

**ORDERED** that Recif's First Motion [Doc. # 128] and Recif's Second Motion [Doc. # 138] are **DENIED**.  It is further

**ORDERED** that Juniper's Motion [Doc. #  137] is **GRANTED**.  Juniper is granted summary judgment on Recif's liability for the copyright infringement and DMCA counterclaims as set forth herein.

SIGNED at Houston, Texas, this 24th day of **September, 2020**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE